**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

M.K.,

Petitioner,

v.

SIXTO MARRERO, Warden of the Imperial Regional Detention Facility, et al.,

Respondents.

Case No.: 3:26-cv-02499-RBM-MMP

**ORDER:**

**(1) DENYING MOTION TO SEAL WITHOUT PREJUDICE [Doc. 13]; and**

**(2) DENYING MOTION TO ENFORCE JUDGMENT [Doc. 10]**

Pending before the Court are Petitioner M.K.'s ("Petitioner") Motion to Enforce Judgment (Doc. 10) and Respondents' Motion to File Documents Under Seal (Doc. 13). For the reasons set forth below, Respondents' Motion to Seal (Doc. 13) is **DENIED** and Petitioner's the Motion to Enforce Judgment (Doc. 10) is **DENIED**.

## I. BACKGROUND

### A. Factual Background

Petitioner, a citizen of Russia, entered the United States with his daughter seeking asylum on January 13, 2025. (Doc. 1 ¶ 16.) Petitioner was separated from his daughter and subsequently detained at the Imperial Regional Detention Facility, where he has

remained since. (*Id.* ¶ 17.) Petitioner was then issued a Notice to Appear ("NTA"), which commenced removal proceedings against him and charged him as removable pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (*Id.* ¶ 18.) On February 28, 2025, Petitioner, proceeding *pro se*, filed an asylum application. (*Id.*) On September 18, 2025, an immigration judge ("IJ") denied his asylum application and ordered Petitioner removed. (*Id.* ¶ 19.) On October 17, 2025, Petitioner filed a notice of appeal with the Board of Immigration Appeals ("BIA"). (*Id.*) "That appeal remains pending, and throughout this entire process, DHS has continued to detain [Petitioner] without providing any individualized bond hearing." (*Id.* ¶ 19.)

On April 20, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) On May 7, 2026, the Court found that Petitioner's detention had become unreasonably prolonged and that due process required that he be provided with a bond hearing. (Doc. 7.) Accordingly, the Court granted the petition and ordered Respondents "to provide Petitioner with an individualized bond hearing" during which Respondents would "bear the burden of establishing by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight." (*Id.* at 5.) On May 13, 2026, and May 15, 2026, Petitioner received a bond hearing, during which the IJ denied release on bond based on flight risk. (*See* Doc. 10-1 at 2–7; Doc. 10-1, Ex. B ["May 13 Hearing Trans."] at 20; Doc. 10-1, Ex. E.)

**B. Procedural History**

On June 26, 2026, Petitioner filed the instant Motion to Enforce Judgment, arguing that "Respondents have now twice failed to provide the constitutionally adequate hearing this Court ordered." (Doc. 10-1 at 1.) On July 2, 2026, the Court set a briefing schedule. (Doc. 11.) On July 16, 2026, Respondents filed a Motion to File Documents Under Seal (Doc. 13) and an Opposition to Petitioner's Motion to Enforce Habeas Corpus Order (Doc. 16) on July 21, 2026. Two days later, Petitioner filed his Reply. (Doc. 17.)

### C. The Bond Hearing

Petitioner's bond hearing was held on May 13, 2026, and May 15, 2026. (May 13 Hearing Trans. at 1.) At the outset of the bond hearing, Petitioner waived interpretation of the hearing. (*Id.*) The IJ noted that—pursuant to this Court's order—Respondents carried the burden of proof at the bond hearing and Respondents agreed. (*Id.* at 2.) Respondents did not argue that Petitioner posed a danger to the community. (*Id.* at 19.) Instead, Respondents argued Petitioner was "an enhanced risk of flight" because he had been "denied all relief," the IJ from the merits hearing "made an adverse credibility determination," and "[h]is ties to the U.S. are extremely limited." (*Id.* at 3, 18.) Petitioner opposed on grounds that Respondents did not meet their burden of proof—"a heavy burden to carry"—because he has complied with all the factors laid out in *In re Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). (*Id.* at 6, 16.) Specifically, Petitioner's only daughter is currently detained in immigration custody in Louisiana, "[h]e has made every appearance in court," "[h]e has no criminal record," "[h]e has no history of immigration violations," and "his manner of entry was through a CBP One appointment"—where "[h]e waited seven months for that appointment rather than trying to cross illegally." (*Id.* at 6.) The IJ obtained a Russian interpreter and called Petitioner to testify. (*Id.* at 7.)

During the IJ's questioning, Petitioner answered questions related to his age, marital status, child, family ties, entry into the United States, and his sponsor. (*Id.* at 7–12.) The IJ found that Petitioner was a flight risk:

> Looking at the *Guerra* factors, there are many factors that go for [Petitioner] and also weigh against [Petitioner]. . . . [H]e is divorced, he has one daughter, the daughter is in the United States in custody. Beyond that, he has no other blood relatives in the United States. He does claim he has one relative, his brother's wife's sister, who is his sponsor. One thing that weighs very strongly in his favor is that he came to the country legally. . . . He's been in custody ever since and he has had no employment in the United States as he has been in custody.
>
> He does have a place to live. His sponsor has stated that he could live with her and her family. . . . His initial merits hearing was denied, and an immigration

> judge did find an adverse credibility finding stating that [Petitioner's] testimony was not credible as it was inconsistent with his prior declaration and written application that he had sworn to, and because it contains additional information that the court finds constitutes significant omissions from his declaration and application.
>
> What is more concerning overall is the sponsor in this case. . . . They're not related by blood. I have concerns regarding the sponsor and how much she makes, how much her family makes overall, and if they can actually afford to take care of the respondent. . . . At this time, I do not find that he actually has a credible sponsor. I'm going to deny his bond as a risk of flight[.]

(*Id.* at 20–21) (emphasis added).

On May 15, 2026, the IJ held another bond hearing, finding a material change in circumstances because Petitioner's sponsor was willing to testify. (Doc. 10-1, Ex. C ["Part 1 of May 15 Hearing Trans."] at 1–2.) Respondents re-called Petitioner to testify and questioned him regarding his sponsor. (*Id.* at 7.) The IJ asked Petitioner questions about his ability to understand the questions being asked of him, the reasons for his asylum application denial, and his physical and mental well-being. (*Id.* at 9–18.) Petitioner's sponsor then testified as to her ability to support Petitioner. (Doc. 10-1, Ex. D ["Part 2 of May 15 Hearing Trans."] at 1–6.) Respondent inquired as to the sponsor's husband's immigration status, her communication with Petitioner through online applications like Instagram and WhatsApp, and her employment status. (*Id.* at 7–13.) Petitioner argued that his ability to understand and explain his "adverse credibility determination" from his merits hearing "has nothing to do with credibility, it has nothing to do with evasiveness." (*Id.* at 15.) Petitioner also argued that "not [having] a blood relationship" with his sponsor is not "determinative of closeness of the relationship" and "a willingness and a genuine desire to be of help" to Petitioner. (*Id.* at 16.) Respondents, however, argued that the sponsor's "inconsistencies in her testimony with respect to how she interacted [with Petitioner] in the past" creates concern regarding her credibility, and that "most of [the *Guerra*] factors do weigh against [Petitioner's] release. (*Id.* at 18–19.) Ultimately, the IJ made: (1) an adverse credibility finding against Petitioner; and (2) found the "majority of the [*Guerra*] factors

weigh[ed] heavily against [Petitioner]." (*Id.* at 27–28.) The IJ denied bond, finding that Petitioner was a flight risk. (*Id.*; Doc. 10-1, Ex. E.)

## II. **MOTION TO SEAL**

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation modified). The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016). When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id.* at 1096–98. When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id.*

Here, the compelling reasons standard applies. *See Gebreyohans v. Mullin*, Case No.: 26-cv-2385-RHS-DEB, 2026 WL 1053087, at *1 (S.D. Cal. Apr. 16, 2026) (analyzing motion to seal related to a habeas petition under the compelling reasons standard). "In general, compelling reasons . . . exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (citation modified).

Respondents seek to file under seal exhibits in their Response "contain[ing] information about Petitioner's asylum claim and tax records related to Petitioner's sponsor." (Doc. 13 at 2.) The exhibits span over 100 pages of court records, letters of support, identification cards, and financial information. (*See* Doc. 14 at 1–121.) Some of these documents may be properly sealed, but others appear amenable to targeted redaction. In any event, the Motion to Seal does not comply with the undersigned's Chambers Rules regarding sealing motion procedures. *See* The. Hon. Ruth Bermudez Montenegro Civ.

Chambers R. IV.B. The Motion to Seal is thus **DENIED WITHOUT PREJUDICE**. Respondents **SHALL** file an amended sealing motion on or before **October 30, 2026**.

## III. MOTION TO ENFORCE JUDGMENT

### A. Legal Standard

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

The Court's "review of an immigration judge's determination of flight risk is for abuse of discretion." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1080 (W.D. Wash. 2026) (citing *Martinez v. Clark*, 124 F.4th 775, 779, 784–85 (9th Cir. 2024)). The same is true of the Court's review of "constitutional challenges to an IJ's detention determination." *Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307, at *5 (E.D. Cal. Mar. 13, 2026) (citing *Martinez*, 124 F.4th at 784). Abuse of direction review "does not involve 'reweigh[ing] evidence' but rather determining whether the IJ 'applied the correct legal standard.'" *Perez Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *5 (S.D. Cal. Apr. 16, 2026) (quoting *Martinez*, 124 F.4th at 784). In other words, the Court's review "is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence." *Loba L.M.*, 2026 WL 710307, at *5 (cleaned up). "[T]he reviewing court must bear in mind that 'the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.'" *Id.* (quoting *Martinez*, 124 F.4th at 784).

**B. Discussion**

Petitioner argues that the May 13 and May 15, 2026 bond hearings failed to comply with the Court's previous order or with due process. (Doc. 10-1 at 12–17.) Specifically, Petitioner argues the IJ: (1) "ignored his own finding that several of the *Guerra* factors favor Petitioner, as well as [Respondents'] failure to meet [their] burden, while shifting the evidentiary burden to Petitioner;" (2) "accepted [Respondents'] arguments without evidence" and failed to meaningfully engage with counter evidence; (3) "improperly relied on speculation and unsupported assumptions in his decision to deny bond;" and (4) did not "consider whether any release conditions could mitigate any perceived risk of flight." (*Id.* at 13–16.) Respondents, on the other hand, claim the IJ complied with the Court's previous order because the IJ provided Petitioner with two "meaningfully individualized bond hearing[s]" during which "the IJ applied the *Guerra* Factors appropriately." (Doc. 16 at 5–6.) Respondents further argue that Petitioner has not exhausted his administrative remedies and that exhaustion should not be waived. (*Id.* at 2–5.) After careful review of Petitioner's Motion, the hearing transcript, and the Parties' briefing, the Court finds that: (1) exhaustion should be waived; and (2) the IJ did not abuse his discretion.

**1. Exhaustion**

Habeas claims are accompanied by a prudential exhaustion requirement. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Exhaustion is prudentially required where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

"If a petitioner fails to exhaust prudentially required administrative remedies, then 'a district court ordinarily should either dismiss the petition without prejudice or stay the

proceedings until the petitioner has exhausted administrative remedies.'" *Hernandez*, 872 F.3d at 988 (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). But a district court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

Here, even if the *Puga* factors weighed in favor of exhaustion, Petitioner has demonstrated that the Court should waive exhaustion because one of the exceptions is present—irreparable injury. Respondents argue that exhaustion is not excused because "agency expertise is required;" "would also encourage other detainees to bypass the BIA;" and "detention alone is not an irreparable injury." (Doc. 16 at 4–5.) While the Court agrees generally with the latter proposition, the irreparable injury here is not the mere fact of Petitioner's detention but rather Petitioner's continued detention based on two allegedly inadequate bond hearings *after* the Court's previous finding that Petitioner's detention had already become unduly prolonged. *See Perez Velasquez*, 2026 WL 1042479, at *4 (collecting cases); *Tiboko-Tifuh v. Noem*, No. 26-CV-1215-JO-DEB, 2026 WL 1603795, at *3–4 (S.D. Cal. June 4, 2026) (waiving exhaustion because requiring BIA review of the bond denial "would likely result in weeks or months of further detention and perpetuate the very harm the Court's [previous order granting the habeas petition] was designed to prevent"); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823, at *5 n.7 (E.D. Cal. Jan. 29, 2026) (same); *Soriano*, 2026 WL 969764, at *4 (same); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) ("[B]ecause of delays inherent in the administrative process, [further] BIA review would result in the very harm that the bond hearing was designed to prevent: 'prolonged' detention without due process during lengthy and backlogged removal proceedings") (citation omitted). Although continued detention alone may not constitute irreparable injury, Petitioner faces continued detention subject to lengthy delays in the BIA appeals process and arising out of a potentially

constitutionally deficient bond hearing. Therefore, the Court finds that Petitioner has demonstrated irreparable injury and that waiving exhaustion is appropriate.

**2. Adequacy of the Bond Hearings**

Petitioner claims the bond hearings he received were legally and constitutionally inadequate. In particular, Petitioner argues his initial bond hearing on May 13, 2026 was legally inadequate because "DHS's arguments and presentation of evidence were not 'individualized,'" and the IJ did not place the evidentiary burden on DHS but instead "stepped in to try to provide the evidence himself." (Doc. 10-1 at 15.) As to his supplemental bond hearing on May 15, 2026, Petitioner argues the IJ failed to apply the proper standard by: (1) "accept[ing] DHS's arguments without evidence" concerning Petitioner's and his sponsor's credibility; (2) improperly relying "on speculation and unsupported assumptions" concerning Petitioner's memory and the denial of his asylum application; and (3) failing to consider evidence mitigating flight risk and alternatives to detention. (*See* Doc. 10-1 at 17–18.)

"[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). "In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an 'abuse of discretion' standard." *C.A.R.V. v. Wofford*, Case No. 1:25-cv-01395-JLT-SKO, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026) (citing *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024)). "Under an abuse of discretion standard, [the Court] cannot reweigh evidence," but instead determines whether the IJ "applied the correct legal standard." *Martinez*, 124 F.4th at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)) (cleaned up). As such, the Court's review "is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence." *C.A.R.V.*, 2026 WL 241823, at *3 (quoting *Quan v. Barr*, Case No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021)) (cleaned up).

A noncitizen may show that an IJ abused her discretion in violation of the due process clause in a bond hearing by demonstrating either that the IJ "simply did not apply

the right standard to the facts" or that "the IJ erred because the evidence itself could not—as a matter of law—have supported the decision to deny bond." *Garcia v. Hyde*, 817 F. Supp. 3d 112, 126 (D.R.I. Dec. 3, 2025) (internal quotations omitted); *see also Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision."). When considering whether a noncitizen poses a flight risk or danger to the community, an IJ "may" consider "any or all of the following:"

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee persecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States.

*In re Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). An IJ has "broad discretion" in weighing these factors "as long as the decision is reasonable." *Id.* "Indeed, an IJ may consider any evidence in the record . . . when assessing flight risk, provided that such evidence is probative and specific." *Perez Velasquez*, 2026 WL 1042479, at *5 (citations omitted).

In this case, the record before the Court shows the IJ permissibly relied on at least the following individualized circumstances: (1) Petitioner's limited avenues for relief, considering Petitioner has an adverse credibility determination from his asylum application merits hearing; (2) Petitioner's minimal ties to the United States, his daughter—currently in immigration custody—and his brother's wife's sister; (3) Petitioner's relationship with his sponsor; and (4) Petitioner's own credibility. Based on these particularized findings, the IJ did not abuse his discretion in finding Petitioner to be a flight risk. *See Osaretin v. LaRose*, No. 26-CV-1508-JES-AHG, 2026 WL 2033135, at *3 (S.D. Cal. July 14, 2026)

(finding the "IJ's decision meets the probative and specific standard under *Guerra*" because "[t]he IJ gave concrete and specific reasons for why he reached his decision.").

Petitioner argues the bond hearings he received were legally and constitutionally inadequate because the IJ considered "the fact that asylum was denied and the case was now on appeal and that his immediate family does not live in the United States." (Doc. 13 at 9.) "Consideration of the strength of a petitioner's appeal is neither unlawful nor unconstitutional. . . . The likelihood of success of [a noncitizen's] appeal impacts the risk of flight, as someone with a strong case has less incentive to flee." *Singh v. Napolitano*, No. 08-CV-464-BTM (JMA), 2011 WL 4041000, at *2 (S.D. Cal. Sep. 9, 2011); *see Matter of R-A-V-P*, 27 I&N Dec. 803, 805 (BIA 2020) (noting an IJ "may consider the likelihood that relief from removal will be granted in determining whether [a noncitizen] warrants a bond"). As such, the Court does not find Petitioner's argument persuasive.

Additionally, the IJ did not abuse his discretion by making an adverse credibility finding against Petitioner. The IJ explained that Petitioner's testimony was contradictory and that Petitioner was unable to directly answer questions regarding his sponsor and the denial of his asylum application. (May 13 Hearing Trans. at 20–21.) Because the record does not reflect the IJ relied on unsupported evidence at the bond hearing, the Court may not reweigh the circumstances permissibly relied on by the IJ. *See Obando Padilla v. LaRose*, No. 26-CV-01459-RBM-JLB, 2026 WL 1002047, at *3 (S.D. Cal. Apr. 13, 2026) ("To the extent [the petitioner] contests the IJ's factual determinations, the Court lacks jurisdiction to 'reweigh [the] evidence' on a challenge to an IJ's bond decision") (quoting *Martinez*, 124 F.4th at 784)).

Finally, the IJ need not consider alternatives to detention after determining that a noncitizen does not warrant bond due to dangerousness or risk of flight. *See Martinez*, 124 F.4th at 786 (citing *Hernandez*, 872 F.3d at 991); *see also Perez v. Wolf*, 445 F. Supp. 3d 275, 291 (N.D. Cal. 2020) ("[A]n IJ need only consider 'alternative conditions to release' once the IJ determines that the detainee is 'neither dangerous nor so great a flight risk as to require detention without bond.'") (quoting *Hernandez*, 872 F.3d at 991). Because

Petitioner was found to be a flight risk, the IJ did not abuse his discretion when he did not consider alternatives to detention.

## IV. CONCLUSION

Based on the foregoing reasons, Respondents' Motion to Seal (Doc. 13) is **DENIED WITHOUT PREJUDICE** and Petitioner's Motion to Enforce (Doc. 10) is **DENIED**. Respondents **SHALL** file an amended motion to seal **on or before October 30, 2026**

**IT IS SO ORDERED.**

DATE: September 30, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE